UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 09cv701 DSD/FLN

Lamarr Love,

Plaintiff,

v.                                          **ORDER AND**
                                            **REPORT AND RECOMMENDATION**

United States of America, et al.

Defendants.
_____

FRANKLIN L. NOEL, United States Magistrate Judge

This matter came before the undersigned United States Magistrate Judge on

Defendants' motion to dismiss, or, in the alternative, motion for summary judgment

(Doc. No. 18).  The matter was referred to the undersigned for Report and

Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons

which follow, this Court recommends Defendants' motion to dismiss be granted (Doc.

No. 18), and Plaintiff's motions to compel and for summary judgment be denied (Doc.

Nos. 26, 29).

I.      **BACKGROUND**

Plaintiff is presently an inmate at the Federal Prison Camp in Duluth, Minnesota,

"FPC-Duluth."  He commenced this action by filing a complaint with attached

Appendixes A-1-D-4 on March 26, 2009, alleging violations of his federal constitutional

rights, claims under the Federal Tort Claims Act, 28 U.S.C. § 2675, employment

discrimination under Title VII, and a RICO claim.

The named defendants are the United States of America, Department of Justice; the

Director of the Bureau of Prisons; Greg Hunter, Administrative Remedy Coordinator for

the Federal Correctional Institution, Memphis, "FCI-Memphis"; Audrey Smith, Unit

Manager for the Federal Prison Camp in Millington, TN, "FPC-Millington"; Hattie Rogers,

Case Manager for FPC-Millington; Mr. Willmer, Correctional Counselor for FPC-

Millington; and "other Government officials known and unknown."  Defendants are sued

in their official and individual capacities.

Plaintiff was an inmate at FPC-Millington[1] in Tennessee at the time of the events

alleged in the Complaint.  In summary, Plaintiff alleges the following in his Complaint.

Plaintiff made an "Inmate Request to Staff" to Defendant Rogers on April 10, 2008,

asking when he would be considered for "early CCC placement" pursuant to 18 U.S.C.

§ 3621.[2]  Compl., ¶ 20, and Appendix A, page A-12.  He did not receive a response to

this request until May 27, 2008, and the response, which stated "I have not received any

---

[1]    The federal prison camp in Millington is a satellite to the Federal
Correctional Institution in Memphis.
http://www.bop.gov/locations/institutions/mem/index.jsp

[2]    The BOP has the authority pursuant to 18 U.S.C. § 3621 to designate the
place of a prisoner's confinement.  Miller v. Whitehead, 527 F.3d 752, 754 (8th Cir.
2008).  Relatedly, Title 18 U.S.C. § 3624(c)(1)(2008) provides:

> The Director of the Bureau of Prisons shall, to the extent
> practicable, ensure that a prisoner serving a term of
> imprisonment spends a portion of the final months of that
> term (not to exceed twelve months), under conditions that
> will afford that prisoner a reasonable opportunity to adjust to
> and prepare for reentry of that prisoner into the community.
> Such conditions may include a community correctional
> facility.

The BOP used to call such facilities Community Confinement Centers "CCC" but now
uses the term Residential Reentry Centers "RRC."  Miller, 527 F.3d at 754.

information. Let me update progress report," was inadequate.  Id.  Plaintiff explained to

Defendants Wilmer and Johnson that he intended to pursue the administrative remedy

process against Rogers for her negligence in responding to his inmate request to staff.

Compl., ¶ 22.  Earlier, at a Team Meeting on May 13, 2008, Plaintiff made a verbal

request for designation to a "CCC/RRC" and Defendants Rogers and Wilmer responded

that "we don't do that." Id., ¶ 21.  These two incidents, and Defendants' subsequent

handling of Plaintiff's administrative remedies regarding these incidents, were the

subject of four grievances Plaintiff pursued, which were numbered 496496, 498399,

498401, and 498402.  Compl., ¶ 8.

Plaintiff further alleges Defendants Rogers, Wilmer and Smith "orchestrated a

scheme" to have him evaluated by "Psych Services" to defeat his attempts to resolve

his April 10, 2008 grievance, in violation of his liberty interest and equal protection under

the law.  Compl., ¶ 10, 11, 23, 25.  Plaintiff also filed two FTCA claims, one of which

was denied, and one of which was received but never assigned a claim number.

Compl., ¶ 7, and Appendix B-4 at B-58-B-66.  Plaintiff states he is bringing the FTCA

claims against the Bureau of Prisons.  Id.

The BOP denied Plaintiff's grievance #496496 because the claim was never

responded to at the institution before submission to the Regional Office.  Compl.,

Appendix A at A-1, A-2.[3]  The Central Office denied grievance #498399 because it had

_____

[3]        The Bureau of Prisons has established an Administrative Remedy
Program to allow inmates to seek formal review of any issue relating to any aspect of
his or her confinement.  28 C.F.R. § 542.10.  Under the Administrative Remedy
Program, an inmate must first informally attempt to resolve an issue with staff.  28
C.F.R. § 542.13(a).  At the next step, the inmate must place a single complaint or a
number of closely related issues on a BP-9 form, and give the completed form to the

not been properly presented to the regional office.  Compl., Appendix B at B-15.

The Central Office denied grievance #498401 because Plaintiff should have filed at the institution level and completed a different BP-9 for each issue.  Compl., Appendix B1 at B-33.  The Regional Office rejected the same grievance because it was repetitive of #498399.  Id. at B-35.  The Central Office denied Plaintiff's next grievance, #498402, because it should have been filed at the institution level and each issue should have been in a separate BP-9 form.  Compl., Appendix B2 at B-42.  The Regional Office denied the same grievance because the remedy was rejected at the institution level, thus submitted without a request and response.  Id. at B-44.  The Administrative Remedy Coordinator at FCI-Memphis rejected the same grievance because Plaintiff submitted the same subject in grievance #498399.  Id. at B-46.

In grievance #508158, Plaintiff complained that he asked Defendant Wilmer about work release in the community pursuant to 18 U.S.C. § 3622, but he was told "[we] don't have that program in this facility."  Compl., Appendix C at C-74, C-76-80.[4] The Central Office denied this grievance because it was not filed at the institution level.

---

staff member at the institution designated to receive such requests.  28 C.F.R. § 542.14(c).  If the inmate is unsatisfied with the Warden's response, he or she may appeal to the Regional Director (on a BP-10 form). 28 C.F.R. § 542.15(a).  If the inmate is unsatisfied with the Regional Director's decision, he or she may appeal (on a BP-11 form) to the General Counsel.  Id.  Appeal to the General Counsel is the final appeal. Id.  The BP-10 and BP-11 forms must be accompanied by copies of the lower level requests and responses.  28 C.F.R. § 542.15(b)(1).

[4]      Counselor Wilmer's statement about not having "that program at this facility" was prefaced by asking if Plaintiff was referring to the Work Release Program. Compl., Appendix C at C-78.  18 U.S.C. § 3622(c) allows the BOP to temporarily release a prisoner for a limited period to work at paid employment in the community under certain conditions.

Id. at C-67.  The Administrative Remedy Coordinator at the institution level denied the grievance because the proper attachments were not attached to the BP-9 form.  Id. at C-73.  Plaintiff resubmitted the BP-9 with attachments to Defendant Smith, but she would not accept it and told Plaintiff to wait for a response on an informal resolution from Counselor Johnson before filing the BP-9.  Id. at C-72.  Plaintiff explained this in a "Declaration of Truth" when he appealed to the Regional Office.  Id.  Based on the facts underlying grievance #508158, Plaintiff also filed an employment discrimination claim in the EEOC and a second FTCA claim.  Compl., ¶ 9, Appendix C-3 at C-97-C-103 and Appendix D at D-141-D-147.

Plaintiff's grievance #517726 stems from his attempt to obtain an Index from Defendant Hunter regarding his exhaustion of administrative remedies for grievance #508158 pursuant to 28 C.F.R. § 542.19.  Compl., Appendix D at D-125, D-126.  The Warden granted Plaintiff's grievance insofar as he provided Plaintiff with the Administrative Remedy Indexes but denied Plaintiff's request for $100,000.00 compensation.  Id. at D-120.  Plaintiff was unsatisfied because he believed Defendant Hunter created a "sanitized index," which was created to cover up the fact that Hunter never entered his grievances in the SENTRY system in the first place.  Id. at D-129.

Plaintiff filed a civil action against Defendants Hunter and Smith in the Western District of Tennessee to enjoin them from subverting his Administrative Remedy Process, because all of his claims were denied for not being submitted at the institution level.  Compl., ¶ 68.  Plaintiff also alleges Defendant Smith attempted to have him transferred to another prison by falsely insisting that he was "unmanageable" in an effort to deny him his liberty interest "to remain at the camp."  Id., ¶¶ 17, 18.  Plaintiff further

alleges he was transferred to a prison outside the Western District of Tennessee in retaliation for filing the lawsuit. Id., ¶ 71. Plaintiff alleges all of the Defendants conspired to deprive him of his constitutional rights and to obstruct justice in violation of RICO. Id., ¶¶ 72-77. Defendants filed a motion to dismiss, or in the alternative, for summary judgment on October 27, 2009 (Doc. No. 18). Plaintiff filed a motion for summary judgment on October 30, 2009, and a motion to compel on November 9, 2009 (Doc. Nos. 26, 29). Plaintiff replied to Defendants' motion on November 11, 2009. (Doc. No. 30).

Defendants move to dismiss or for summary judgment on eight grounds: (1) the Court lacks personal jurisdiction over all individually named defendants; (2) that all of Plaintiff's claims save one are unexhausted and should be dismissed; (3) Plaintiff does not have a protected liberty interest in the administrative remedy process; (4) Plaintiff fails to state a claim that Defendants obstructed his access to the courts; (5) Plaintiff fails to state a claim for retaliation; (6) Plaintiff fails to state a claim based on Defendants' refusal to refer him for RRC placement; (7) Defendants are entitled to qualified immunity; and (8) Plaintiff's conclusory allegations under various statutes fail to state a claim. Defendants contend Plaintiff's only exhausted claim is an alleged violation of his constitutional rights based on Defendant Hunter's alleged failure to enter Plaintiff's administrative remedy requests in the SENTRY system.

For the reasons set forth more fully below, the Court recommends that Defendants' motion to dismiss be **GRANTED**, and that Plaintiff's motion for summary judgment be **DENIED**. Additionally, Plaintiff's motion to compel is **DENIED**.

## II.      DISCUSSION

### A.      Standard of Review for Motion to Dismiss

On a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss if there has been a failure to state a claim upon which relief may be granted.  When considering such a motion, the Court must accept all factual allegations in the Complaint as true.  Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).  To avoid dismissal, the complaint must contain sufficient facts to satisfy the legal requirements of the claim.  DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002).  The complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts entitling him to relief for his claim.  Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001).   The complaint, however, must contain a claim that is plausible on its face.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  A claim is facially plausible when it is supported by facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.

To make a determination under a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss a court should generally consider only the allegations contained in the complaint.  McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007).  The court may, however, consider exhibits attached to the complaint.  Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698, n. 4 (8th Cir. 2003).

Here, the Court concludes that it is appropriate to treat Defendants' motion as a motion to dismiss, as discussed below.

**B.** **The Court Lacks Personal Jurisdiction Over the Individual Defendants**

Whether a Minnesota court has personal jurisdiction over a nonresident defendant depends on whether the Minnesota long-arm statute was satisfied or whether the exercise of jurisdiction over the defendants would violate the Due Process Clause of the Fourteenth Amendment. Guinness Import Co., v. Mark VII Distributors, Inc., 153 F.3d 607, 613-14. (8th Cir. 1998). Because the Minnesota long-arm statute has been interpreted to extend to the fullest degree allowed under the Due Process Clause of the United States Constitution, only one inquiry is necessary. See Id. (citing Minn. Stat. Ann. § 543.19 and Trident Enter. v. Kemp & George, 502 N.W.2d 411, 414 (Minn.Ct.App. 1993)).

The Eighth Circuit Court of Appeals has set forth the due process inquiry for a Minnesota court's exercise of personal jurisdiction over a nonresident defendant as follows:

> In order to exercise personal jurisdiction over a nonresident defendant, due process requires that such a defendant have "minimum contacts" with the forum state such that maintenance of a suit against that defendant does not offend "'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980), and it is essential that "there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting Hanson v.

> Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283
> (1958)).  "Purposeful availment" means that the defendant's
> contacts with the forum state must not be random, fortuitous,
> attenuated, or the result of unilateral activity of a third person
> or another party.  *Id.*

Guinness Import Co., 153 F.3d at 614.

All of the acts that Plaintiff alleges were committed by the individual defendants occurred in Tennessee while Plaintiff was incarcerated there, and all of the individual defendants were employed in Tennessee.  The only connection between any individual defendant and the State of Minnesota is that Plaintiff filed this action after he was transferred to a prison in Minnesota, and the transfer was allegedly initiated by one of the individual defendants.  Neither the act of the transfer, nor the initiation of the transfer constitutes "purposeful availment" of the benefits or protections of the laws of Minnesota.  See Wycoff v. Nix, 994 F.2d 844, 1993 WL176608, at *1 (8th Cir. May 27, 1993)  (finding proper forum to address claim of retaliatory transfer is state in which wrongful act occurred).  Therefore, this Court lacks personal jurisdiction over the individual defendants, and the Defendants' motion to dismiss should be granted with respect to the individual defendants.

### C.     The United States and its Agencies Have Sovereign Immunity Against Plaintiff's Constitutional Claims

Sovereign immunity is a jurisdictional threshold matter.  Harmon Indus. Inc. v. Browner, 191 F.3d 894, 903 (8th Cir. 1999).  "It is the settled rule that a sovereign state cannot be sued without its consent . . ."  Danforth v. U.S., 102 F.2d 5, at *8 (1939).  "The jurisdiction of a federal court to entertain claims against the United States must depend upon a specific act of Congress . . ."  Id.  "It is well settled that a Bivens action

cannot be prosecuted against the United States and its agencies because of sovereign immunity." Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998).[5]  Thus, the Court lacks jurisdiction over Plaintiff's constitutional claims against the United States, the Department of Justice, and the Bureau of Prisons ("BOP").  Therefore, the Defendants' motion to dismiss should be granted with respect to all claims alleging constitutional violations.  Consequently, the only remaining claims in the complaint are: 1) the FTCA claims against the BOP; 2) the employment discrimination claim against the BOP; and 3) the RICO claim.

**D.     The Complaint Does Not State an FTCA Claim Upon Which Relief May Be Granted.**

An action under the Federal Tort Claims Act is the exclusive remedy for torts committed by Government employees in the scope of their employment.  United States v. Smith, 499 U.S. 160, 163 (1991).  To bring an actionable claim, the claimant must show he exhausted his FTCA administrative remedies.  Motley v. U.S., 295 F.3d 820, 821 (2002).  28 U.S.C. § 2675(a) governs the exhaustion procedure for FTCA claims and provides:

An action shall not be instituted upon a claim against the

_____

[5]      Plaintiff seeks to bring his constitutional claims under 42 U.S.C. § 1983, which applies to federal claims against *State* actors.  Section 1983 does not apply in this case because Plaintiff's claims are against the federal government (and its employees).  See Carpenter's Produce v. Arnold, 189 F.3d 686, 687 (8th Cir. 1999) ("Bivens actions are implied causes of actions for damages against government officials for constitutional violations where Congress has not specifically provided for such a remedy").  Instead, Plaintiff's claims must be construed as arising under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971) (holding person who demonstrates violation of federal constitutional rights by federal agents may seek redress in federal court even without explicit Congressional declaration of a remedy.)

United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . .

Plaintiff exhausted his first federal tort claim by submitting a timely administrative claim with the appropriate agency and receiving a denial from the agency. See 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32 (setting forth FTCA administrative remedy process). Plaintiff exhausted his second federal tort claim by submitting a timely administrative claim with the appropriate agency, offering evidence of receipt of the claim, and waiting the requisite six months without receiving a final disposition of the claim from the agency. The Court will consider Plaintiff's FTCA claims against Defendant United States of America. See Federal Express Corp. v U.S. Postal Service, 151 F.3d 536, 540 (6th Cir. 1998) (FTCA claim must be initiated against United States itself rather than against a federal agency.)

In Plaintiff's first FTCA claim, he alleges that federal employees obstructed his access to and ability to exhaust the grievance procedure at FPC-Millington. The purpose of the Federal Tort Claims Act is to provide redress for personal injury, death, and/or damage to or loss of property. 28 U.S.C. § 2675; 28 C.F.R. § 543.30. Plaintiff does not allege personal injury or property damage resulting from his difficulties in exhausting his administrative remedies, nor could he plausibly do so where he was not

prevented from filing a meritorious claim in court as a result. Furthermore, Plaintiff's claims that he was wrongly referred to "Psych services" for an evaluation and wrongly transferred out of FPC-Millington do not allege a personal injury or loss of property, and should also be dismissed for failure to state a claim upon which relief may be granted.

The main thrust of Plaintiff's first FTCA claim was the denial of his request for early RRC placement. See Plaintiff's first FTCA claim, Compl., Appendix B, at B-60-B66. Plaintiff requested early RRC placement pursuant to 18 U.S.C. § 3621(b), which allows the BOP to designate where an inmate will serve his or her sentence.

There is a long history of various interpretations of the interaction between 18 U.S.C. § 3624(c), the statute governing RRC placement, and 18 U.S.C. § 3621(b). See Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008) (reviewing history of statutes). Under the present version of 18 U.S.C. § 3624(c),[6] the BOP is authorized to ensure "to the extent practicable" that "a prisoner serving a term of imprisonment spends a portion of the final months of that term under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for reentry into the community. Such conditions may include a community correctional facility." The maximum transition period contemplated by the statute is twelve months, but the BOP is authorized pursuant to 18 U.S.C. § 3621(b) to approve transition periods in an RRC in excess of such limit. See Morrow v. Rios, Civil No. 08-320 (JRT/RLE), 2009 WL 924525, at *2 (D.Minn. Mar. 31, 2009) (citing Elwood v. Jeter, 386 F.3d 842, 857 (8th Cir. 2004).

---

[6]     "[I]n April 2008, Congress enacted the Second Chance Act of 2007, which amended § 3624(c). Pub.L. No. 110-199, 122 Stat. 657 (2008)." Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2009).

In response to the amendment of § 3624(c) by the Second Chance Act, "the BOP issued guidance directing that "inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates." Miller, 527 F.3d at 756. The Eighth Circuit Court of Appeals stated, "[t]he statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC." Id. at 758. The Eighth Circuit has affirmed a district court order requiring only that the BOP consider a request for early RRC placement in good faith. Id. (citing Fults v. Sanders, 442 F.3d 1088, 1089 (8th Cir. 2006).

Even assuming Plaintiff has alleged facts that the BOP was negligent in its duty to consider his requests for early RRC placement in good faith,[7] Plaintiff has not alleged that breach of such duty proximately caused him any personal injury or property damage. Plaintiff is entitled only to consideration of serving a portion of his term of imprisonment under conditions that will afford him a reasonable opportunity to adjust to and prepare for reentry into the community "to the extent practicable." The fact that he was denied two requests for early RRC placement is insufficient to indicate any personal injury. Plaintiff can request RRC placement closer to his release date and still receive a reasonable opportunity to adjust and prepare for reentry into the community. Therefore, the Court recommends denying Plaintiff's FTCA claim regarding his request for early RRC placement.

---

[7]    It is unlikely the BOP failed to consider Plaintiff's request in good faith because Defendant Smith's response to Plaintiff's request merely implied she needed time to look into it, and Defendants Rogers' and Wilmer's response that "we don't do that," could have meant they do not have the authority within the BOP to authorize early RRC placement pursuant to 18 U.S.C. § 3621(b).

Plaintiff's second FTCA claim is based on denial of his request to work in the community at a paying job, pursuant to 18 U.S.C. § 3622.  <u>See</u> Compl., Appendix C at C97-C103.  Although Plaintiff does not allege a specific tort, it appears to the Court that Plaintiff intended to assert a negligence claim.  However, the United States does not have a duty to provide Plaintiff the opportunity to work for pay in the community.  18 U.S.C. § 3622(c) provides:

> The Bureau of Prisons may release a prisoner from his place of imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2), if such release appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions to--
> . . .
> (c) work at paid employment in the community while continuing in official detention at the penal or correctional facility . . .

The decision to award work release is within the sole discretion of the BOP.  <u>U.S. v. Grass</u>, 561 F.Supp.2d 535, 536 (E.D.Pa. 2008).  Thus, Plaintiff cannot state a tort claim based on the BOP's denial of his request for work release.  Plaintiff's second FTCA claim should be dismissed.

**E.  The Complaint Does Not State an Employment Discrimination Claim Upon Which Relief May Be Granted.**

Plaintiff alleges the BOP discriminated against him in violation of Title VII by denying him an employer/employee relationship when he was eligible for work release with a zero point community custody classification.  Compl., ¶ 9.  Plaintiff filed a complaint with the EEOC on August 12, 2008.  Compl., Appendix D at D-142-D-146.  In his EEOC complaint, Plaintiff stated the reason he was given for denying his request for

work release was "we do not have that program at this facility."  Id. at D-143.  Plaintiff

alleged he was discriminated against on the basis of race because "white inmates

across the country are allowed to work for outside employers in predominantly white

areas."  Id. at D-145.  Plaintiff alleges he waited the requisite six month period for a

response from the EEOC before filing suit, but he does not indicate that he received a

right to sue letter.  Compl., ¶ 9.  Defendants do not address the exhaustion issue

regarding Plaintiff's Title VII claim.[8]

        "Federal employees[9] asserting Title VII claims must exhaust their administrative

remedies as a precondition to filing a civil action in federal district court."  MacAdams v.

Reno, 64 F.3d 1137, 1141 (8th Cir. 1995) (citing Brown v. General Servs. Admin., 425

U.S. 820, 832 (1976).  Administrative remedies are exhausted by the timely filing of a

charge and the receipt of a right to sue letter.  42 U.S.C. §2000e-5(f)(1);  Faibisch v.

University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002); see also Mercer v. City of

Cedar Rapids, Iowa, 79 F.Supp.2d 1055, 1061 (N.D. Ia. 1999) (stating exhaustion

requirement is that suit be filed within specified period after receiving a right to sue

_____

        [8]        Instead, Defendants argue Plaintiff fails to state a claim under Title VII
because the complaint lacks a factual predicate for the claim.  However, because
Plaintiff is a pro se litigant, the Court must liberally construe the complaint and look not
only to the complaint but also to attachments to the complaint.  See e.g.  Woods v.
North Dakota University System, No. 1:08-cv-090, 2009 WL 223093 (D.N.D. Jan. 28,
2009) (considering attachments to complaint on motion to dismiss).  Plaintiff's attached
EEOC claim explains the basis for his discrimination complaint.

        [9]        It appears to the Court that Plaintiff – an inmate who has applied to the
BOP for the opportunity for work release – is clearly not an "employee" within the
meaning of 42 U.S.C. § 2000e(b) and 2000e-2.  However, as the Court finds that
Plaintiff has not exhausted his administrative remedies with respect to his EEOC claim,
the Court need not reach this issue.

letter); see also Kane v. State of Iowa Dept. Of Human Services, 955 F.Supp. 1117,

1133-34 (N.D. Ia 1997) (stating when respondent in EEOC complaint is a government

agency, and EEOC has not "reached the case," the DOJ is the proper agency to issue

the right to sue letter.)   Because Plaintiff has alleged no facts to indicate he received a

notice of right to sue letter, his Title VII claim should be dismissed without prejudice as

premature.  See Goal v. Retzer Resources, Inc., No. 5-09-CV-00137, 2009 WL

5174181, at *3 (E.D.Ark. Dec. 22, 2009) (dismissing unexhausted Title VII claims

without prejudice as premature).

    **F.**    **The Complaint Does Not State a RICO Claim Upon Which Relief May Be Granted.**

    Plaintiff alleges the individual defendants conspired to deprive him of his right to

contract to sell his labor with the intent to benefit UNICOR[10] and the BOP by keeping a

monopoly on inmate labor for UNICOR.  Compl., ¶¶ 72-77.  Plaintiff alleges the

defendants obstructed justice and tampered with him as a witness by interfering with his

exhaustion of administrative remedies and retaliating against him.  Id.  This claim, for

the reasons discussed below, is not plausible on its face and should be dismissed for

failure to state a claim upon which relief may be granted.

> "The Racketeer Influenced and Corrupt Organizations Act,
> (RICO) 18 U.S.C. §§ 1961-1968 (1994 ed. and Supp. IV),
> creates a civil cause of action for "[a]ny person injured in his
> business or property by reason of a violation of section
> 1962." 18 U.S.C. § 1964(c) (1994 ed. Supp. IV).  Subsection
> (d) of section 1962 in turn provides that "[i]t shall be unlawful
> for any person to conspire to violate any of the provisions of

_____

[10]    "UNICOR, Federal Prison Industries, Inc. is a self-sustaining, self-funded corporation established in 1934 by executive order to create a voluntary real-world work program to train federal inmates."   http://www.unicor.gov/?navlocation=AboutUNICOR.

subsection (a), (b), or (c) of [§ 1962]."

Beck v. Prupis, 529 U.S. 494, 495-96 (2000). Subsection (a) of § 1962, in pertinent part, makes it unlawful for a person to use income derived from a pattern of racketeering activity to establish or operate an enterprise which engages in, or the activities of which affect, interstate or foreign commerce. Subsection (b) of § 1962, in pertinent part, makes it unlawful for any person through a pattern of racketeering activity to acquire any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. Subsection (c) of § 1962, in pertinent part, makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

18 U.S.C. § 1961(5) defines "a pattern of racketeering activity" as requiring at least two acts of racketeering activity. A person does not have a cause of action under § 1964(c) if the necessary overt act done in furtherance of a RICO conspiracy is not an act of racketeering. Id. at 496. 18 U.S.C. § 1961(1) contains an exhaustive list of racketeering activities, commonly referred to as predicate acts. Id. at 497, n.2.

Liberally construing his complaint, Plaintiff alleges predicate acts of violations of 18 U.S.C. §§ 3621, 3622, 3624, 28 U.S.C. § 2679 (FTCA), Title VII, civil rights (Bivens action), and obstructing justice and tampering with him as a witness by interfering with his attempts to exhaust his administrative remedies and retaliating against him.

Violations of 18 U.S.C. §§ 3621, 3622, 3624, 28 U.S.C. § 2679, Title VII and Bivens

claims are not predicate acts under the RICO statutes. 18 U.S.C. § 1961(1); see

Manion v. Freund, 967 F.2d 1183, 1186 (8th Cir. 1992) (offense not listed under §

1961(1) is not a predicate act).

Obstructing justice in violation of 18 U.S.C. § 1503 is a predicate act under

RICO. Id. However, Plaintiff's allegations of interference with his exhaustion of

administrative remedies do not establish the elements under § 1503 because there are

no allegations of threats of force or actual force. Section 1503(a) provides:

> Whoever corruptly, or by threats or force, or by any
> threatening letter or communication, endeavors to influence,
> intimidate, or impede any grand or petit juror, or officer in or
> of any court of the United States, or officer who may be
> serving at any examination or other proceeding before any
> United States magistrate judge or other committing
> magistrate, in the discharge of his duty, or injures any such
> grand or petit juror in his person or property on account of
> any verdict or indictment assented to by him, or on account
> of his being or having been such juror, or injures any such
> officer, magistrate judge, or other committing magistrate in
> his person or property on account of the performance of his
> official duties, or corruptly or by threats or force, or by any
> threatening letter or communication, influences, obstructs or
> impedes, or endeavors to influence, obstruct or impede, the
> due administration of justice, shall be punished. . .

As another predicate act, Plaintiff alleges tampering with him as a witness, which

the Court construes as a claim that Defendants attempted to prevent him from bringing

his claims to court by interfering with his attempts to exhaust his administrative

remedies. Tampering with a witness in violation of 18 U.S.C. § 1512 is a predicate act

under RICO. See 18 U.S.C. § 1961(1). However, Plaintiff has not adequately pled

violation of 18 U.S.C. § 1512. Subsection (a) of § 1512 requires killing or attempting to

kill a witness, subsection (b) requires using physical force or threat of physical force to tamper with a witness, and subsection (c) involves acts to "hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings."  Plaintiff's allegations of interference with his exhaustion of administrative remedies do not rise to the level of violation of this statute because Plaintiff was not prevented from communicating his complaints to a law enforcement officer or a judge, as he in fact has done in this case.

Plaintiff alleges only one other predicate act, retaliation against him as a witness. Retaliation against a witness in violation of 18 U.S.C. § 1513 is a predicate act listed under § 1961(1).  To state a civil RICO claim, a plaintiff must allege a pattern of racketeering activity, which is defined by statute as at least two predicate acts.  18 U.S.C. § 1961(5); Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 406 (8th Cir. 1999).  Plaintiff has  failed to do so here.  Therefore, Plaintiff's RICO claim should be dismissed for failure to state a claim upon which relief may be granted.

### G.  The Plaintiff's Motion for Summary Judgment Should be Denied

Plaintiff's motion for summary judgment is premised on the allegation that Defendants failed to serve an answer or otherwise reply to the complaint within twenty days of service or failed to comply with the Court's Order of September 23, 2009, granting an enlargement of time.  (Doc. No. 26.)  This Court granted Defendants' motion for enlargement of time to respond to the Complaint, setting a deadline of October 27, 2009.  (Doc. No. 14.)  Defendants complied with this Order and filed their motion to

dismiss, or, in the alternative for summary judgment on October 27, 2009. Therefore, Plaintiff's motion for summary judgment should be denied.

### H. The Plaintiff's Motion to Compel Is Denied

In Plaintiff's motion to compel, Plaintiff essentially seek permission to serve certain discovery requests on Defendants to obtain evidence necessary to defeat Defendants' Motion to Dismiss or for Summary Judgment. This Court recommends granting Defendants' Motion to Dismiss because the Court lacks jurisdiction over the individual defendants, the United States and its agencies have sovereign immunity against Plaintiff's constitutional claims, and Plaintiff's complaint fails to state a claim upon which relief may be granted for the remaining claims. Plaintiff's proposed discovery cannot cure any of these defects. Therefore, the motion to compel is denied.

## III.    ORDER AND RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel [#29] be **DENIED**.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment [#26] be **DENIED**.

2.    Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (#18) be **GRANTED**.

DATED:    May 18, 2010

*s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties on or before June 1, 2010, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.